IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTORIA MCWILLIAMS<br><br>      Plaintiffs,<br>v.<br><br>REDNER'S MARKETS, INC<br><br>      Defendant. | Case No.:<br><br>Hon.<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff Victoria McWilliams ("Plaintiff") brings Complaint against Redner's markets, Incorporated ("Defendant" or "Redner's") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Plaintiff seeks redress for Defendant's unlawful employment practices based on sex, age, and disability, as well as retaliation for engaging in protected activity under federal and state law.

2. Plaintiff alleges that Defendant discriminated against her, failed to provide reasonable accommodations for her disabilities, subjected her to a hostile work

1

environment, retaliated against her for opposing unlawful practices, and ultimately terminated her employment in violation of these statutes.

3. Plaintiff seeks all remedies available under Title VII, the ADEA, the ADA, and the PHRA, including compensatory damages, punitive damages where authorized, liquidated damages under the ADEA, back pay, front pay or reinstatement, attorneys' fees and costs, and all other relief deemed just and proper by this Court.

## THE PARTIES

4. Plaintiff is an adult citizen residing in Oxford, Pennsylvania.

5. Defendant is a business organized under the laws of Pennsylvania with its principal place of business at 3 Quarry Rd., Reading, PA 19605.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331 as one arising under laws of the United States.

7. Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) because the "unlawful employment practice[s]" giving rise to this lawsuit took place within this district. *See,* 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations

Commission ("PHRC") on March 25, 2022. Plaintiff has received her Notice of Right to Sue. All administrative prerequisites to suit have been satisfied. *See* **Exhibit A.**

## FACTUAL BACKGROUND

9. Plaintiff was hired in July 2020 but started her first day of work on August 9, 2020, as a Meat Cutter with 37 years of experience. She received excellent evaluations and multiple raises.

10. By early 2021, Plaintiff developed mobility impairments that substantially limited major life activities including walking, standing, lifting, bending, and working. Her impairments caused severe pain and instability and required the use of braces.

11. These limitations affected essential job functions and daily activities and were obvious to management.

12. From July 20 through August 3, 2021, Plaintiff obtained medical treatment and provided multiple doctor's notes to managers.

13. Plaintiff requested leave as an accommodation and informed management she was awaiting further medical guidance.

14. Defendant maintained rigid policies limiting medical leave to two weeks for non-FMLA-eligible employees.

15. On August 3, 2021, Sue Rotkiske fired the Plaintiff by phone. On August 4, 2021, the Defendant issued a letter stating Plaintiff had "voluntarily quit" effective July 18 due to not returning within two (2) weeks.

16. Plaintiff did not quit; she sought and required medical leave as an accommodation.

## COMPANYWIDE POLICIES AND PRACTICES

17. Defendant's policies show that since at least 2018, Defendant maintained a companywide practice restricting medical leave to no more than two (2) weeks regardless of medical necessity.

18. These practices caused disabled employees, including Plaintiff, to be discharged when unable to return within this rigid timeframe.

19. Upon information and belief, Defendant's policies were applied uniformly to a class of employees with disabilities.

20. Defendant repeatedly failed to engage in the interactive process before discharging employees for disability-related absences.

21. Furthermore, Defendant maintained medical information in personnel files instead of confidential medical files and failed to preserve required leave-related records.

22. Defendant used qualification standards that screened out individuals with disabilities, including denying continued employment based on the need for

accommodations such as medical leave.

23. Defendant enforced employment arbitration agreements requiring employees to relinquish statutory rights by prohibiting access to administrative relief mechanisms.

24. Defendant engaged in unlawful interference and retaliation against employees seeking accommodations or leave.

25. Defendant engaged in unlawful interference and retaliation against employees seeking medical leave.

26. The Defendant is liable for the actions of its agents under the theory of *Respondeat Superior.* Once more, the actions and inaction undertaken in the Plaintiff's averments are of a continuing nature qualifying her claims to fall under the continuing violation theory.

## COUNT 1
## ADA DISABILITY DISCRIMINATION

27. Plaintiff incorporates all preceding paragraphs.

28. Plaintiff is a qualified individual with a disability under the ADA because she suffers from significant mobility impairments that substantially limit major life activities including walking, standing, bending, lifting, and working. Plaintiff required braces to ambulate, experienced severe pain with weight-bearing, and her impairments were visibly apparent to management.

29. Plaintiff was fully qualified to perform the essential functions of her Meat Cutter position. She had 37 years of industry experience, received excellent performance evaluations, and received multiple merit-based raises, including one in early 2021 to retain her after another employer sought to hire her.

30. Beginning in early 2021, Plaintiff experienced worsening mobility problems that substantially limited major life activities. Defendant's managers knew of her impairments, observed her wearing braces, saw her physical struggle with basic mobility, and received multiple medical notes documenting her limitations and her need for medical leave.

31. Plaintiff notified Defendant beginning July 20, 2021, that she was unable to stand or walk due to her condition, provided repeated medical documentation, and communicated with at least four managers about her limitations: Store Manager Scott Roland, Assistant Manager Brinn LNU, Night Manager Shelby Fuller, and Meat Manager Curtis ("Curt") LNU.

32. Rather than accommodating Plaintiff's disability and her need for additional leave, Defendant applied an inflexible, companywide two-week leave policy that automatically classified employees as having "voluntarily quit" if they could not return to work after two weeks — even when the reason for the absence was a disability requiring medical treatment.

33. Plaintiff provided medical information, remained in contact with management, and never resigned. Nevertheless, Defendant issued a letter dated August 4, 2021, stating she "voluntarily quit" effective July 18, 2021, backdating her termination to cut off her eligibility for FMLA and company benefits. See **Exhibit B.**

34. Defendant terminated Plaintiff because of her disability and because she required leave for her impairments.

35. Defendant's discriminatory termination caused Plaintiff to lose wages, benefits, seniority, retirement contributions, and caused emotional pain, suffering, embarrassment, and humiliation.

**WHEREFORE**, Plaintiff demands all available remedies, including damages for emotional harm and punitive damages.

## COUNT 2
## ADA DISABILITY – FAILURE TO ACCOMMODATE

36. Plaintiff incorporates all preceding paragraphs.

37. Plaintiff had a disability requiring reasonable accommodation when she experienced severe mobility impairment making walking, standing, bending, and lifting difficult or impossible.

38. Plaintiff repeatedly requested reasonable accommodations, including time off to attend medical appointments, temporary medical leave while awaiting medical evaluation, and modified duty as needed.

7

39. Plaintiff provided at least four managers, Roland, Brinn, Fuller, and Curt (LNU) with medical notes documenting her limitations and explicitly informed them she would update them as soon as her medical providers cleared her to return.

40. Rather than engaging in the interactive process, Defendant rigidly applied a uniform, two-week maximum leave policy that it applied to all employees regardless of disability or medical need.

41. Defendant did not discuss accommodations with Plaintiff, did not ask what restrictions she had, did not consider extended leave, and did not explore any alternative accommodation, even though leave is a well-established form of reasonable accommodation under the ADA.

42. Defendant instead treated Plaintiff as having "quit" because her disability required more than two weeks of leave — an unlawful qualification standard that screens out individuals with disabilities.

43. Defendant's failure to engage in the interactive process or make any attempt to accommodate Plaintiff's disability violates the ADA.

44. As a result, Plaintiff suffered wage loss, loss of benefits, financial hardship, and emotional distress.

**WHEREFORE**, Plaintiff demands all available remedies, including damages for emotional harm and punitive damages.

## COUNT 3
## ADA DISABILITY-HOSTILE WORK ENVIRONMENT

45. Plaintiff incorporates all preceding paragraphs.

46. Plaintiff was subjected to unwelcome conduct based on her disability, including being pressured to return to work despite clear medical restrictions, being treated as unreliable or a policy violator because of her disability-related absences, and being accused of "voluntarily quitting" while she was medically incapacitated.

47. Management questioned Plaintiff's credibility, failed to take her medical documentation seriously, and repeatedly insisted she return despite visible impairment.

48. Plaintiff was treated less favorably than younger or non-disabled coworkers who violated attendance policies, engaged in misconduct, or required leave but were not terminated.

49. Defendant's conduct created an intimidating, offensive, and hostile environment that interfered with Plaintiff's ability to perform her job.

50. Defendant is liable for a hostile work environment because the misconduct was perpetrated by supervisors and decision makers.

    **WHEREFORE**, Plaintiff demands all available remedies, including damages for emotional harm and punitive damages.

## COUNT 4
## ADA DISABILITY RETALIATION

51. Plaintiff incorporates all preceding paragraphs.

52. Plaintiff engaged in protected activity when she (a) requested medical leave, (b) provided medical documentation, and (c) requested reasonable accommodations for her disability.

53. Immediately after requesting leave and while continuing to provide medical documentation, Defendant retaliated by:

- refusing to consider extended leave,
- refusing to engage in the interactive process,
- characterizing her disability-related absence as a "voluntary quit," and
- terminating her during a period of incapacitation.

54. The close temporal proximity between her requests and her termination establishes causation.

55. Defendant's retaliation caused Plaintiff lost income, benefits, and emotional harm.

**WHEREFORE**, Plaintiff demands all available remedies, including damages for emotional harm and punitive damages.

## COUNT 5
## PHRA DISABILITY DISCRIMINATION

56. Plaintiff incorporates all preceding paragraphs.

57. Plaintiff is disabled under the PHRA because her impairments substantially limited major life activities and/or Defendant regarded her as disabled.

58. Defendant terminated Plaintiff due to her disability and need for medical leave.

59. Defendant treated similarly situated younger, male, or non-disabled employees more favorably, such as employees who were repeatedly late, in violation of policy, or committed misconduct but were not terminated.

60. Defendant's conduct violated the PHRA.

**WHEREFORE**, Plaintiff seeks all remedies allowed under the PHRA.

## COUNT 6
## PHRA DISABILITY – FAILURE TO ACCOMMODATE

61. Plaintiff incorporates all preceding paragraphs.

62. Plaintiff sought reasonable accommodations, including medical leave

63. Defendant refused to engage in the interactive process and enforced its two-week maximum leave policy regardless of an employee's disability or medical need.

64. Defendant terminated Plaintiff because she required additional leave for her disability.

**WHEREFORE,** Plaintiff seeks all remedies allowed under the PHRA.

## COUNT 7
## PHRA DISABILITY-HOSTILE WORK ENVIRONMENT

65. Plaintiff incorporates all previous paragraphs

66. Plaintiff was subjected to unwelcome conduct based on her disability and need for medical leave.

67. Defendant treated Plaintiff's disability as a violation of attendance policy rather than as a protected medical condition, which contributed to a hostile work environment.

**WHEREFORE,** Plaintiff seeks all remedies allowed under the PHRA.

## COUNT 8
## PHRA DISABILITY RETALIATION

68. Plaintiff incorporates all preceding paragraphs.

69. Plaintiff engaged in protected activity under the PHRA by requesting accommodations and medical leave and by providing medical documentation.

70. Defendant retaliated by terminating her.

**WHEREFORE**, Plaintiff seeks all remedies allowed under the PHRA.

## COUNT 9
## TITLE VII/PHRA SEX-BASED DISCRIMINATION

71. Plaintiff incorporates all preceding paragraphs.

72. Plaintiff is a member of a protected class based on her sex (female).

73. Plaintiff was fully qualified for her Meat Cutter position and had decades of experience, excellent performance evaluations, and multiple raises.

74. Plaintiff was subjected to adverse employment actions including:

- heightened scrutiny of her attendance,

- refusal to accommodate medical needs,

- being deemed a "voluntary quit" despite clear communication and medical documentation, and

- termination

75. Plaintiff was treated less favorably than similarly situated male employees in the Meat Department and storewide. Specifically, Plaintiff is aware of multiple younger male employees who violated attendance policies, were chronically late, engaged in misconduct, or even committed theft, yet were either:

- given warnings,

- allowed to return to work, or

- never disciplined at all

76. Examples include:

- Steve Shinnick, a male replacement hired shortly after Plaintiff's termination, who went out on leave for carpal tunnel shortly after being hired but was permitted to remain employed and return.

- Bob Herman, a younger male who was repeatedly 20 minutes late, allegedly terminated for stealing, yet brought back without losing vacation time, benefits, or his position.

- Matt McCauley, a younger male, also allegedly terminated for theft but brought back after three days without loss of benefits.

77. Plaintiff, despite being more experienced and having an excellent work record, was terminated while male employees who engaged in more serious violations were retained.

78. Defendant's disparate treatment of Plaintiff was based, at least in part, on sex.

79. Defendant's conduct constitutes unlawful sex-based discrimination in violation of Title VII and the PHRA entitling her to relief under both statutes.

## COUNT 10
## TITLE VII/PHRA SEX-BASED RETALIATION

80. Plaintiff incorporates all preceding paragraphs.

81. Plaintiff complained internally about unfair treatment compared to younger male coworkers and sought protection and fair application of policy.

82. After raising concerns and after requesting protected leave, Plaintiff was treated as a policy violator rather than as an employee with medical need.

83. Defendant used pretextual reasoning ("voluntary quit") to remove Plaintiff from employment, while male coworkers who engaged in misconduct were not terminated.

84. Defendant's adverse actions were causally connected to Plaintiff's complaints of unfair treatment and her protected requests.

85. Defendant's conduct constitutes unlawful sex-based retaliation in violation of Title VII and the PHRA entitling her to relief under both statutes.

## \COUNT 11
## TITLE VII/PHRA SEX-BASED HOSTILE WORK ENVIRONMENT

86. Plaintiff incorporates all preceding paragraphs.

87. Plaintiff was subjected to disparate application of policies, heightened scrutiny, and harsher penalties than similarly situated male coworkers.

88. Plaintiff was treated as a burden, questioned about her credibility, and denied accommodations routinely provided to male employees.

89. Defendant's conduct was severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive work environment based on sex.

90. Defendant's conduct constitutes unlawful sex-based hostile work environment in violation of Title VII and the PHRA entitling her to relief under both statutes.

## COUNT 12
## TITLE VII/PHRA AGE-BASED DISCRIMINATION

91. Plaintiff incorporates all preceding paragraphs.

92. Plaintiff is over 40 years old and therefore a member of a protected class under the Age Discrimination in Employment Act ("ADEA") and the PHRA.

93. Plaintiff performed her job duties above expectations and received multiple raises and excellent evaluations.

94. Plaintiff was replaced by or treated less favorably than younger male employees, including but not limited to:

- younger new hires such as Steve Shinnick,
- younger male employees in the department,
- younger male employees who committed misconduct (e.g., theft or attendance violations) but were retained or reinstated.

95. Defendant applied its two-week medical leave rule in a harsher manner against Plaintiff than against younger employees.

96. Plaintiff's termination occurred under circumstances giving rise to an inference of age discrimination, including:

- replacement by younger workers,
- younger male coworkers being allowed far more flexibility, and
- younger coworkers being excused from violations that resulted in Plaintiff's termination.

97. Defendant's stated reason for termination ("voluntary quit") is false and pretextual, and age was a motivating and/or determinative factor.

98. Defendant's conduct constitutes unlawful age-based discrimination in violation of the ADEA and the PHRA entitling her to relief under both statutes.

## COUNT 13
## TITLE VII/PHRA AGE-BASED RETALIATION

99. Plaintiff incorporates all preceding paragraphs.

100. Plaintiff objected to and questioned unfair treatment compared to younger coworkers.

101. After asserting her rights and identifying discriminatory treatment, Plaintiff was marked as a "voluntary quit" and terminated.

102. Defendant's actions were causally connected to Plaintiff's protected activity under the ADEA the PHRA.

103. Defendant's conduct constitutes unlawful age-based retaliation in violation of the ADEA and the PHRA entitling her to relief under both statutes.

## COUNT 14
## TITLE VII/PHRA AGE-BASED HOSTILE WORK ENVIRONMENT

104. Plaintiff incorporates all preceding paragraphs.

105. Plaintiff was subjected to a pattern of less favorable treatment compared to younger employees — not taken seriously when injured, denied accommodations, and held to stricter attendance standards.

106. Younger employees were repeatedly excused from policy violations while Plaintiff was disciplined or terminated for disability-related absences.

107. Taken together, Defendant's conduct created a hostile work environment based on age.

108. Defendant's conduct constitutes unlawful age-based hostile work environment in violation of the ADEA and the PHRA entitling her to relief under both statutes.

**WHEREFORE**, the Plaintiff prays that the Court grant relief on her Causes of Action as specified below.

109. The Plaintiff prays that the Court award monetary relief as follows:

110. On her Causes of Action, order the Defendant to pay equitable monetary relief and compensatory damages to the Plaintiff as are asserted under the ADA, Title VII, ADEA and the PHRA where and as applicable, in an amount to be proven at trial.

111. The Plaintiff prays the Court award her costs, expenses, and attorneys' fees, payable by Defendant, where and as applicable, by determining the Plaintiff is a prevailing party on her Causes of Action and thereupon awarding Plaintiff her reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

112. Further, Plaintiff prays the Court award monetary relief as follows:

113. The Plaintiff prays that the Court Order Defendant to pay pre- and post-judgment interest on all monetary amounts awarded, as provided by law.

114. The Plaintiff prays that the Court retains jurisdiction of this case for a sufficient period to assure that Defendant has fully complied with the remedies to the greatest extent practicable.

115. The Plaintiff prays the Court award all appropriate pain, suffering, humiliation, and punitive damages, where and as applicable under her respective causes of action.

116. The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands trial by jury on all counts so triable.

DATED this the 24th day of November 2025.

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, (206980)
**DONHAM LAW**
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
717.881.7855 (Phone)
Email: J.Donham@Donhamlaw.com